**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN CHRISTIE and JEFFREY SMITH, | : |
| | : CIVIL ACTION |
| Plaintiffs, | : |
| | : |
| v. | : No. 1:25-cv-08548 |
| | : |
| CRYSTAL WINDOW & DOOR | : |
| SYSTEMS, LTD., THOMAS CHEN, | : **COMPLAINT** |
| KIRK MICHAEL, ROBERT CARROLL, | : |
| RANDY DANIELS, and PATRICK | : |
| MEYER, | : |
| | : |
| Defendants. | : |
| | : |

Plaintiffs, JOHN CHRISTIE and JEFFREY SMITH (collectively, "Plaintiffs"), by and through their undersigned attorneys, Royer Cooper Cohen Braunfeld LLC, on the one hand, file this Complaint (this "Complaint") against Defendants, CRYSTAL WINDOW & DOOR SYSTEMS, LTD. ("Crystal"), THOMAS CHEN, KIRK MICHAEL, ROBERT CARROLL, RANDY DANIELS, and PATRICK MEYER (collectively, "Defendants") on the other hand, and aver as follows:

**<u>INTRODUCTION</u>**

1. This is an action for breach of contract and causes of action under applicable wage payment and collection statutes, in which Plaintiffs seek to redress Defendants' ongoing failure to pay them severance benefits to which they are entitled under their written Employment Agreements with Crystal.

2. There is no basis to withhold these amounts from Plaintiffs, who were involuntarily terminated from their employment with Crystal without "Cause" effective September 11, 2025.

**PARTIES**

3.      John Christie ("Christie") is an individual and citizen of Pennsylvania, who resides at 290 South Woodmont Drive, Downingtown, Pennsylvania 19335.

4.      Jeffrey Smith ("Smith") is an individual and citizen of Pennsylvania, who resides at 220 Eshelman Road, Lancaster, Pennsylvania 17601.

5.      Crystal Window & Door Systems, Ltd. is a corporation formed under the laws of the State of New York, with its principal place of business located at 31-10 Whitestone Expressway, Flushing, New York 11354.

6.      Upon information and belief, Thomas Chen ("TC") is an individual and citizen of New York, who resides at 150-121 Powell Cove Boulevard, Whitestone, New York 11357.

7.      Upon information and belief, Kirk Michael ("Michael") is an individual and citizen of Texas, who resides at 4308 Hookbilled Kite, Austin, Texas 78738.

8.      Upon information and belief, Robert Carroll ("Carroll") is an individual and citizen of Texas, who resides at 3020 Shelton Way, Plano, Texas 75093.

9.      Upon information and belief, Randy Daniels ("Daniels") is an individual and citizen of New York, who resides at 87 Lakeshore Drive, Eastchester, New York 10709.

10.     Upon information and belief, Patrick Meyer ("Meyer") is an individual and citizen of Colorado, who resides at 342 Madison Street, Denver, Colorado 80206.

11.     TC is the sole shareholder of Crystal, holding one hundred percent (100%) of the ownership interest of Crystal, and is individually responsible for unpaid wages under the New York Business Corporation Law (NYBSC) § 630(a).

12.     TC is also the Chair of Crystal's Board of Directors (the "Board"), and Michael, Carroll, Daniels, and Meyer are all members of and directors on the Board (TC, Michael, Carroll, Daniels, and Meyer are collectively, the "Board Members").

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

14.     This Court has personal jurisdiction over Defendants because Crystal is a New York corporation with its principal place of business in New York, and the Board Members have otherwise made or established contacts within this judicial district sufficient to permit the exercise of personal jurisdiction by this Court over them.

15.     Venue over this action is proper pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims against Defendants occurred in this judicial district.

## FACTUAL BACKGROUND

16.     Founded in 1990, Crystal is a national door and window manufacturer for residential, commercial, and institutional buildings based in Flushing, NY.[1]

17.     According to its website, Crystal employs roughly 800 staff members across its five plants and is "one of the largest window manufacturers in North America."

---

[1] *See* https://crystalwindows.com/.

18. On or about June 4, 2024, Crystal sought out and hired Smith, an experienced executive with years of experience in the industry, as its Chief Executive Officer ("CEO") and a member of its Board.

19. In connection with Smith's employment, Crystal and Smith entered into an employment agreement (the "Smith Employment Agreement"). A true and correct copy of the Smith Employment Agreement is attached hereto as Exhibit A.

20. The Smith Employment Agreement contained non-competition and non-solicitation restrictive covenants, as well as termination and contractual severance terms.

21. At the time Crystal terminated Smith's employment without "Cause," Smith's Annual Base Salary (as defined in the Smith Employment Agreement) was $500,000.

22. On or about January 6, 2025, Crystal hired Christie as its Chief Financial Officer ("CFO"). Christie brought substantial experience to Crystal since he had served in similar roles for many years in the construction industry.

23. In connection with Christie's employment, Crystal and Christie entered into an employment agreement, which includes an "Annex A – Amendment to Employment Agreement Between Crystal Windows and John P. Christie Dated January 6, 2025" that replaced Section 5 of the original agreement (collectively, the "Christie Employment Agreement" and, together with the Smith Employment Agreement, the "Employment Agreements"). A true and correct copy of the Christie Employment Agreement is attached hereto as Exhibit B.

24. The Christie Employment Agreement included non-competition and non-solicitation restrictive covenants, as well as termination and contractual severance terms.

25. At the time Crystal terminated Christie's employment without "Cause," Christie's Annual Base Salary (as defined in the Christie Employment Agreement) was $275,000.

**A.  Severance Monies and Benefits Under the Smith Employment Agreement**

26.  Section 5 of the Smith Employment Agreement provides for certain severance payments and benefits in the event of Crystal's termination of Smith's employment without "Cause."

27.  Section 5 of the Smith Employment Agreement sets forth a definition for "Accrued Benefits," to be paid upon termination of Smith's employment for any reason, which is comprised of:

1.  any earned but unpaid portion of Executive's Annual Base Salary through the Date of Termination (as defined below), any earned but unpaid Annual Bonus as of the Date of Termination, any earned but unpaid Incentive Bonus as of the Date of Termination, all due and payable in the next scheduled payday following the Date of Termination.

2.  to the extent not theretofore paid or provided, any other reimbursements or benefits due to Executive through, or for the period prior to, the Date of Termination, under this Agreement or applicable employee benefit plan or Company policy, payable at the time(s) set forth in this Agreement, or such plans or policies; and

3.  a prorated portion of any Annual Bonus for the then-current calendar year based on year-to-date goal achievement, and a prorated portion of any Incentive Bonus for the then-current calendar year based on the number of days remaining in the calendar year, payable when such Annual Bonus and Incentive Bonus would otherwise be paid under this Agreement.

(collectively, the "Smith Accrued Benefits").

28.  Section 5(c) of the Smith Employment Agreement then provides, in pertinent part, as follows:

**c) Termination By Company without Cause or by Executive for Good Reason**. If the Employment Period is terminated by Company without Cause or by Executive for Good Reason, then Company shall pay to Executive:

1.  the [Smith] Accrued Benefits; and

2.  contingent upon Executive, or Executive's estate, as applicable, entering into a release provided by Company (which Company will provide within

five (5) calendar days of the Date of Termination) and mutually acceptable to Executive within sixty (60) days of the Date of Termination, additional severance benefits, as follows (collectively, the "Severance Benefits"):

    i.    Twelve (12) months of Executive's Annual Base Salary in effect at the Date of Termination (the "Severance Payment"). The Severance Payment shall be payable in installments over twelve (12) months (the "Severance Period") in accordance with Company's general payroll practices in effect on Executive's Date of Termination (but no less frequently than monthly), and the first payment shall commence as soon as is administratively feasible following the Release Effective Date, but in any event no more than sixty (60) days following the Date of Termination; and

    ii.    if Executive timely elects continued coverage under COBRA under Company's current group health insurance policies following the Date of Termination, then Company will reimburse Executive for its regular share of the premium for Executive's health insurance coverage as of the Date of Termination for the twelve (12) month period beginning on the first of the calendar month after the Date of Termination (the "COBRA Period"). Notwithstanding the foregoing, if the COBRA assistance set forth in this subparagraph is prohibited by law or insurance contract or would result in the imposition of excise taxes on Company for failure to comply with the nondiscrimination requirements of the Patient Protection and Affordable Care Act of 2010, as amended, and the Health Care and Education Reconciliation Act of 2010, as amended (to the extent applicable), in lieu thereof, Company shall pay Executive an amount in cash equal to the monthly premiums that Company would have otherwise incurred to provide such continuation coverage in accordance with its normal payroll schedule over the COBRA Period and consistent with its regular payroll practices. For purposes hereof, "COBRA" means the requirements of Part 6 of Subtitle B of Title I of the Employee Retirement Income Security Act of 197 4, as amended, Section 4980B of the Internal Revenue Code, and any similar state law.

    iii.    Full acceleration of payment for your Long Term Incentive Awards in effect as of the Date of Termination, payable within sixty (60) days of the Date of Termination.

    iv.    Full payment of your Signing Bonus and Additional Cash Awards in the amounts set forth at Section 4(d), above, payable

> when such amounts are otherwise to be paid under this Agreement.

(Exhibit A § 5(c)).

29.     In short, Section 5 of the Smith Employment Agreement provides that in the event Crystal terminates Smith's employment without "Cause," he is entitled to payment of the Smith Accrued Benefits, twelve (12) months of his Annual Base Salary, twelve (12) months of reimbursements for Smiths' COBRA premiums, his prorated Annual Bonus, his prorated Incentive Bonus, any other earned payments, such as his Long Term Incentive Awards, and two remaining Additional Cash Awards outstanding as of the termination of Smith's employment without "Cause" (the Additional Cash Awards totaling $320,000.00) under the Smith Employment Agreement.[2]

30.     Crystal terminated Smith's employment without "Cause" effective September 11, 2025.

**B.  Severance Monies and Benefits Under the Christie Employment Agreement**

31.     Section 5 of the Christie Employment Agreement provides for certain severance payments and benefits to Christie in the event of Crystal's termination of Christie's employment without "Cause."

32.     Section 5 of the Christie Employment Agreement sets forth a definition for "Accrued Benefits," to be paid upon termination of Christie's employment for any reason, which is comprised of:

1.  any earned but unpaid portion of Executive's Annual Base Salary through the Date of Termination (as defined below), any earned but unpaid Annual Bonus as of the Date of Termination, any earned but unpaid Incentive Bonus as of the Date of Termination, all due and payable in the next scheduled payday following the Date of Termination.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Employment Agreements.

7

2. to the extent not theretofore paid or provided, any other reimbursements or benefits due to Executive through, or for the period prior to, the Date of Termination, under this Agreement or applicable employee benefit plan or Company policy, payable at the time(s) set forth in this Agreement, or such plans or policies; and

3. a prorated portion of any Annual Bonus for the then-current calendar year based on year-to-date goal achievement, and a prorated portion of any Incentive Bonus for the then-current calendar year based on the number of days remaining in the calendar year, payable when such Annual Bonus and Incentive Bonus would otherwise be paid under this Agreement.

(collectively, the "Christie Accrued Benefits").

33.    Section 5(c) of the Christie Employment Agreement then provides, in pertinent part, as follows:

> **c) Termination By Company without Cause or by Executive for Good Reason**. If the Employment Period is terminated by Company without Cause or by Executive for Good Reason, then Company shall pay to Executive:
>
> 1. the [Christie] Accrued Benefits; and
>
> 2. contingent upon Executive, or Executive's estate, as applicable, entering into a release provided by Company (which Company will provide within five (5) calendar days of the Date of Termination) and mutually acceptable to Executive within sixty (60) days of the Date of Termination, additional severance benefits, as follows (collectively, the "Severance Benefits"):
>
>> i.    Nine (9) months of Executive's Annual Base Salary in effect at the Date of Termination (the "Severance Payment"). The Severance Payment shall be payable in installments over nine (9) months (the "Severance Period") in accordance with Company's general payroll practices in effect on Executive's Date of Termination (but no less frequently than monthly), and the first payment shall commence as soon as is administratively feasible following the Release Effective Date, but in any event no more than sixty (60) days following the Date of Termination; and
>>
>> ii.    if Executive timely elects continued coverage under COBRA under Company's current group health insurance policies following the Date of Termination, then Company will reimburse Executive for its regular share of the premium for Executive's health insurance coverage as of the Date of

Termination for the nine (9) month period beginning on the first of the calendar month after the Date of Termination (the "COBRA Period"). Notwithstanding the foregoing, if the COBRA assistance set forth in this subparagraph is prohibited by law or insurance contract or would result in the imposition of excise taxes on Company for failure to comply with the nondiscrimination requirements of the Patient Protection and Affordable Care Act of 2010, as amended, and the Health Care and Education Reconciliation Act of 2010, as amended (to the extent applicable), in lieu thereof, Company shall pay Executive an amount in cash equal to the monthly premiums that Company would have otherwise incurred to provide such continuation coverage in accordance with its normal payroll schedule over the COBRA Period and consistent with its regular payroll practices. For purposes hereof, "COBRA" means the requirements of Part 6 of Subtitle B of Title I of the Employee Retirement Income Security Act of 197 4, as amended, Section 4980B of the Internal Revenue Code, and any similar state law.

    iii.    Full acceleration of payment for your Long Term Incentive Awards in effect as of the Date of Termination, payable within sixty (60) days of the Date of Termination.

(Exhibit B, Annex A at § 5(c)).

34. In short, Section 5 of the Christie Employment Agreement provides that in the event Crystal terminates Christie's termination of employment without "Cause," he is entitled to payment of the Accrued Benefits, nine (9) months of his Annual Base Salary, nine (9) months of reimbursements for Christie's COBRA premiums, his prorated Annual Bonus, his prorated Incentive Bonus, and any other earned payments, such as his Long Term Incentive Awards.

35. Crystal terminated Christie's employment without "Cause" effective September 11, 2025.

C. **Crystal's September 10, 2025 Board Meeting**

36. On September 10, 2025, Crystal held a Board meeting.

37. TC (Chair of the Board), Daniels (Vice Chairman of the Board), Meyer (Board Member), Carroll (Board Member), Michael (Board Member), Curt Rush (General Counsel),

9

Wayne Tan (Director of Accounting and Finance), Steven Chen (son of TC, President of Crystal), Johnson Chen (son of TC), Smith, and Christie attended the Board Meeting.

38. At the end of the Board meeting, TC asked Daniels, Steven Yu (Vice President of Sales), Joseph Chang (Vice President of Operations), Wayne Tan, Steven Chen, Christie, and Smith to stay for a separate meeting apart from the larger Board.

39. During this subsequent meeting, TC began yelling and berating the present individuals, making unreasonable demands.

40. At one point during TC's outburst, Smith asked if TC was seeking to replace Smith in his role, and that if TC did so, Crystal would be obligated to honor any severance obligations to Smith as set forth in the Smith Employment Agreement.

41. Finally, in an attempt to de-escalate the situation, Smith left the meeting and returned to his office.

42. Moments later, TC, Daniels, Steven Chen and John Christie came to Smith's office.

43. TC apologized to Smith and Christie for his outburst and out-of-line comments, shaking hands with Smith and Christie and bowing.

44. After this apology, the remaining group left Smith's office.

45. On the way out of Smith's office, Daniels grabbed Christie's arm and assured him, in response to one aspect of TC's prior tirade, that he could continue to use a hotel to visit Crystal's New York offices as required.

46. A few minutes later, Steven Chen returned to Smith's office, and continued apologizing for his father, TC's, outburst.

47. Smith and Steven Chen then discussed one of Crystal's facilities and plans for going forward.

48.     Smith then asked Steven Chen when Steven Chen planned on returning from his educational leave to work at Crystal full time, to which Steven Chen replied he would be returning in February 2027, urging Smith to stay until then and beyond to keep helping with Crystal operations.

49.     Smith agreed, stating "I plan to be here."

50.     Consistent with that representation, Smith reported for work as usual on September 11, 2025.

51.     Smith arrived at the office before 8 a.m., answering emails and scheduling meetings for the day.

52.     Christie, similarly, reported for work as usual on September 11, 2025.

53.     Christie, Smith, and Michael engaged in a business meeting on the morning of September 11, 2025 in the normal course of Christie and Smith's employment.

**D.   On September 11, 2025, Crystal Terminates Smith and Christie's Employment Without Cause.**

54.     Notwithstanding that Smith and Christie had reported for work as usual on September 11, 2025 (the day after the September 10, 2025 Board meeting at which TC had engaged in his tirade), at around 9:30 a.m. on September 11, 2025, Daniels called Smith and stated that TC had decided to terminate both he and Christie's employment, which Daniels commented was a wrong decision.

55.     Mid-morning, on September 11, 2025, Smith discussed the Smith Employment Agreement with Carroll, and particularly, the contractually owed severance. Carroll stated to Smith: "You earned every bit of this," referring to Smith's owed severance benefits.

56.    At around 5 p.m. on September 11, 2025 (hereinafter, the "Termination Date"), Daniels met with Smith to confirm his termination and stated at least twice: "I am officially notifying you; you are terminated."

57.    Daniels explicitly stated that all the Board Members strongly disagreed with TC's decision to terminate Smith and Christie.

58.    When Smith asked Daniels about the Smith Employment Agreement and the contractual severance benefits, Daniels directed that he should "work it out" with Curt Rush, Crystal's general counsel.

59.    At approximately 5:30 p.m. on September 11, 2025, Daniels met separately with Christie and stated that Christie was "officially terminated."

60.    In response to Christie's specific question as to whether the severance benefits in the Christie Employment Agreement would be honored, Daniels responded affirmatively, stating that Christie's severance monies and benefits, including among other things his nine (9) months' salary as severance, would be honored.

61.    Notably, at no point did Daniels, or anyone else at Crystal, designate or even purport to designate either Smith's or Christie's termination of employment as for "Cause."

62.    Indeed, no such grounds existed or were ever asserted to exist by Crystal, any member of the Board, or TC, let alone honoring any pertinent notice and cure provisions as required under both the Smith Employment Agreement and the Christie Employment Agreement.

63.    The following Monday, on September 15, 2025, Crystal's Human Resources Manager, Isabella Leung, sent termination letters to both Christie and Smith (individually, the "Christie Termination Letter" and the "Smith Termination Letter", and collectively, the "Termination Letters"). A true and correct copy of the Christie Termination Letter is attached

12

hereto as Exhibit C, and a true and correct copy of the Smith Termination Letter is attached hereto as Exhibit D.

64.    While the substance of the Termination Letters differs slightly, they both start with the same sentence: "This letter is to confirm that you have terminated your employment with Crystal Window & Door Systems, Ltd. (the "Company") effective September 11, 2025."

65.    Both Termination Letters are completely devoid of any reference to the severance benefits contracted for in the Employment Agreements.

66.    Deceptively, the Termination Letters each characterize with respect to Smith and Christie, respectively, that "you have terminated your employment with [Crystal]."

67.    Clearly, Christie and Smith had no plans of resigning and were prepared to work a normal day on September 11, 2025 and going forward, until their respective employments were cut short by Daniels' notification that they both had been terminated, seemingly at TC's request.

68.    It is evident that Christie and Smith were the innocent targets of TC's emotional outburst and were terminated out of spite and without "Cause."

69.    Despite the clear and unambiguous language of the Employment Agreements and the fact that Smith and Christie are entitled to specific severance benefits as alleged herein, Crystal has refused to honor its contractual obligations under the Employment Agreements.

70.    Crystal has further breached the Employment Agreements by failing to provide releases to Smith and Christie, respectively, within five (5) calendar days of September 11, 2025, as required by their respective Employment Agreements relating to the severance obligations therein.

71.    Christie and Smith, on their own accord and through counsel, have contacted Crystal and its general counsel to demand the severance benefits it respectively owes to Christie

and Smith since it terminated their employment without Cause, and these demands have not been met.

72.    The conduct detailed herein has caused Plaintiffs significant damage.

## COUNT I

### BREACH OF CONTRACT

### (Christie v. Crystal)

73.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

74.    At all times relevant hereto, Christie was employed by Crystal.

75.    The Christie Employment Agreement is a legally binding contract, to which Crystal is signatory.

76.    Pursuant to the Christie Employment Agreement, Christie is entitled to certain severance benefits, as specifically outlined in the Christie Employment Agreement.

77.    Specifically, Christie is owed: severance pay in the amount of nine (9) months' pay of Christie's Annual Base Salary; nine (9) months of reimbursements for Christie's COBRA premiums at its level of contributions for Christie and his dependents prior to the Termination Date; and a prorated Annual Short-term Cash Incentive Bonus based on the Termination Date ("Christie's Severance Benefits").

78.    Christie was terminated without "Cause" under the Christie Employment Agreement.

79.    As set forth at length above, Crystal has failed to pay Christie's Severance Benefits which he is entitled to under the Christie Employment Agreement, and thus, Crystal is in material breach of the Christie Employment Agreement.

80. Despite demands made by Christie, Crystal has failed to cure their unlawful conduct, which is without any justification or excuse.

81. Christie has suffered and will continue to suffer substantial damages as the direct result of Crystal's ongoing failure to pay Christie's Severance Benefits to which he is entitled.

**WHEREFORE,** Christie respectfully requests that the Court enter judgement in his favor and against Crystal, along with an award of monetary damages in an amount to be fully determined at trial, consequential damages, pre- and post-judgment interest, and other relief as the Court may deem appropriate.

## COUNT II
### BREACH OF CONTRACT
### (Smith v. Crystal)

82. The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

83. At all times relevant hereto, Smith was employed by Crystal.

84. The Smith Employment Agreement is a legally binding contract, to which Crystal is signatory.

85. Pursuant to the Smith Employment Agreement, Smith is entitled to certain severance benefits, as specifically outlined in the Smith Employment Agreement.

86. Specifically, Smith is owed: severance pay in the amount of twelve (12) months' pay of Smith's Annual Base Salary; twelve (12) months of reimbursements for Smith's COBRA premiums at its level of contributions for Smith and his dependents prior to the Termination Date; two (2) payments of $160,000 each, pursuant to Sections 5(c)(iv) and 4(d)(2) of the Smith Employment Agreement; a prorated Annual Bonus; and a prorated Incentive Bonus in the amount of $56,250 (9/12 x .15 x $500,000) ("Smith's Severance Benefits").

15

87.    Smith was terminated without "Cause" under the Smith Employment Agreement.

88.    As set forth at length above, Crystal has failed to pay Smith's Severance Benefits which he is entitled to under the Smith Employment Agreement, and thus, Crystal is in material breach of the Smith Employment Agreement.

89.    Despite several demands made by Smith, Crystal has failed to cure their unlawful conduct, which is without any justification or excuse.

90.    Smith has suffered and will continue to suffer substantial damages as the direct result of Crystal's ongoing failure to pay Smith's Severance Benefits to which he is entitled.

WHEREFORE, Smith respectfully requests that the Court enter judgement in his favor and against Crystal, along with an award of monetary damages in an amount to be fully determined at trial, consequential damages, pre- and post-judgment interest, and other relief as the Court may deem appropriate.

## COUNT III
### VIOLATION OF NEW YORK LABOR LAW
#### (Christie v. Crystal)

91.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

92.    Crystal is an "employer" under NYLL § 190 *et. seq.*

93.    Because Christie was employed by Crystal, a New York corporation, and regularly worked from Crystal's New York office, Christie was an "employee" under NYLL § 190(2).

94.    Section 7 of the Christie Employment Agreement states that "the terms, covenants, conditions, and provisions of [the Christie Employment Agreement] shall be governed by, construed, and interpreted in accordance with, and pursuant to the laws of the State of New York without giving effect to the conflicts of laws rules thereof." Ex. B at § 7.

16

95.     Wages are defined by the New York Labor Law statute (NYLL) as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." NYLL § 190(1).

96.     Pursuant to the Christie Employment Agreement, Christie is entitled to full and timely payment of Christie's Severance Benefits, that include guaranteed bonuses, which were directly tied to Christie's role as an employee and are considered a part of his compensation, and thus, constitute wages under New York Labor Law.

97.     Further, NYLL § 190(1) defines wages to include separation pay by engrafting § 198-c (which provides at subsection (2) that such payments are included). Since Christie's Severance Benefits constitute separation pay, these amounts are deemed wages.

98.     Crystal has refused to honor its obligations under the Christie Employment Agreement and has failed to pay Christie's Severance Benefits as it is contractually obligated to do.

99.     Crystal's failure to tender Christie the compensation due and owing to him pursuant to the terms of the Christie Employment Agreement was willful, intentional, and done in bad faith in violation of NYLL § 190 *et. seq.*

100.    Christie is entitled to recover full wages, benefits, wage supplements, liquidated damages that accrued prior to the commencement of this action, liquidated damages, attorneys' fees, and other damages and relief that are appropriate and provided under NYLL § 190 *et. seq.*

**WHEREFORE,** Christie respectfully requests that the Court enter judgment in his favor and against Crystal, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

17

## COUNT IV

### VIOLATION OF NEW YORK LABOR LAW

### (Smith v. Crystal)

101.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

102.    Crystal is an "employer" under NYLL § 190 *et. seq.*

103.    Because Smith was employed by Crystal, a New York corporation, and regularly worked from Crystal's New York office, Smith was an "employee" under NYLL § 190(2).

104.    Section 7 of the Smith Employment Agreement states that "the terms, covenants, conditions, and provisions of [the Smith Employment Agreement] shall be governed by, construed, and interpreted in accordance with, and pursuant to the laws of the State of New York without giving effect to the conflicts of laws rules thereof." Ex. A at § 7.

105.    Wages are defined by the NYLL as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." NYLL § 190(1).

106.    Pursuant to the Smith Employment Agreement, Smith is entitled to full and timely payment of Smith's Severance Benefits, that include guaranteed bonuses, which were directly tied to Smith's role as an employee and are considered a part of his compensation, and thus, constitute wages under New York Labor Law.

107.    Further, NYLL § 190(1) defines wages to include separation pay by engrafting § 198-c (which provides at subsection (2) that such payments are included). Since Smith's Severance Benefits constitute separation pay, these amounts are deemed wages.

108.    Crystal has refused to honor its obligations under the Smith Employment Agreement and has failed to pay Smith's Severance Benefits as it is contractually obligated to do.

109. Crystal's failure to tender Smith the compensation due and owing to him pursuant to the terms of the Smith Employment Agreement was willful, intentional, and done in bad faith in violation of NYLL § 190 *et. seq.*

110. Smith is entitled to recover full wages, benefits, wage supplements, liquidated damages that accrued prior to the commencement of this action, liquidated damages, attorneys' fees, and other damages and relief that are appropriate and provided under NYLL § 190 *et. seq.*

**WHEREFORE,** Smith respectfully requests that the Court enter judgment in his favor and against Crystal, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT V
## VIOLATION OF NEW YORK LABOR LAW
### (Christie v. Board Members)

111. The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

112. Because Christie was employed by Crystal, a New York corporation, and regularly worked from Crystal's New York office, Christie was an "employee" under NYLL § 190(2).

113. At all relevant times hereto, the Board Members had authority to, and did in fact, exercise operational control over Crystal, and had the power to hire, fire, and control the wages and working conditions of Christie.

114. The Board Members thus constitute an "employer" under NYLL § 190 *et. seq.*

115. The Board Members have refused to honor their obligations under the Christie Employment Agreement and have failed to pay Christie's Severance Benefits as they are contractually obligated to do.

116.    The Board Members' failure to tender Christie the compensation due and owing to him pursuant to the terms of the Christie Employment Agreement was willful, intentional, and done in bad faith in violation of NYLL § 190 *et. seq.*

117.    Christie is entitled to recover full wages, benefits, wage supplements, liquidated damages that accrued prior to the commencement of this action, liquidated damages, attorneys' fees, and other damages and relief that are appropriate and provided under NYLL § 190 *et. seq.*

**WHEREFORE,** Christie respectfully requests that the Court enter judgment in his favor and against the Board Members, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

<u>**COUNT VI**</u>
<u>**VIOLATION OF NEW YORK LABOR LAW**</u>
<u>**(Smith v. Board Members)**</u>

118.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

119.    Because Smith was employed by Crystal, a New York corporation, and regularly worked from Crystal's New York office, Smith was an "employee" under NYLL § 190(2).

120.    At all relevant times hereto, the Board Members had authority to, and did in fact, exercise operational control over Crystal, and had the power to hire, fire, and control the wages and working conditions of Smith.

121.    The Board Members thus constitute an "employer" under NYLL § 190 *et. seq.*

122.    The Board Members have refused to honor their obligations under the Smith Employment Agreement and have failed to pay Smith's Severance Benefits as they are contractually obligated to do.

20

123.    The Board Members' failure to tender Smith the compensation due and owing to him pursuant to the terms of the Smith Employment Agreement was willful, intentional, and done in bad faith in violation of NYLL § 190 *et. seq.*

124.    Smith is entitled to recover full wages, benefits, wage supplements, liquidated damages that accrued prior to the commencement of this action, liquidated damages, attorneys' fees, and other damages and relief that are appropriate and provided under NYLL § 190 *et. seq.*

**WHEREFORE,** Smith respectfully requests that the Court enter judgment in his favor and against the Board Members, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT VII
## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### (IN THE ALTERNATIVE)
### (Christie v. Crystal)

125.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

126.    The allegations contained in this Count of the Complaint are pleaded as an alternative theory of recovery.

127.    At all relevant times hereto, Christie was employed by Crystal, and Crystal is an "employer" within the meaning of the Pennsylvania Wage Payment and Collection Law ("PWPCL").

128.    At all times relevant hereto, Christie had a permanent residence and performed portions of his job duties for Crystal from his home located within the Commonwealth of Pennsylvania, meaning Christie is an "employee" under the PWPCL.

129.    The Christie Employment Agreement is a legally binding contract to which Crystal is signatory.

130.    Pursuant to the Christie Employment Agreement, Christie is entitled to full and timely payment of Christie's Severance Benefits, that include guaranteed bonuses, which were directly tied to Christie's role as an employee and are considered a part of his compensation, and thus, constitute wages under the PWPCL.

131.    Crystal has refused to honor its obligations under the Christie Employment Agreement and has failed to pay Christie's Severance Benefits as it is contractually obligated to do.

132.    Despite multiple demands made by Christie, Crystal has failed to cure its unlawful conduct, which is without any justification or excuse.

133.    Christie has suffered and will continue to suffer substantial damages as the direct result of Crystal's ongoing failure to pay Christie's Severance Benefits to which he is entitled.

**WHEREFORE,** Christie respectfully requests that the Court enter judgment in his favor and against Crystal, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, consequential damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT VIII
## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### (IN THE ALTERNATIVE)
### (Smith v. Crystal)

134.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

22

135. The allegations contained in this Count of the Complaint are pleaded as an alternative theory of recovery.

136. At all relevant times hereto, Smith was employed by Crystal, and Smith is an "employer" within the meaning of the PWPCL.

137. At all times relevant hereto, Smith had a permanent residence and performed portions of his job duties for Crystal from his home located within the Commonwealth of Pennsylvania, meaning Smith is an "employee" under the PWPCL.

138. The Smith Employment Agreement is a legally binding contract to which Crystal is signatory.

139. Pursuant to the Smith Employment Agreement, Smith is entitled to full and timely payment of Smith's Severance Benefits, that include guaranteed bonuses, which were directly tied to Smith's role as an employee and are considered a part of his compensation, and thus, constitute wages under the PWPCL.

140. Crystal has refused to honor its obligations under the Smith Employment Agreement and has failed to pay Smith's Severance Benefits as it is contractually obligated to do.

141. Despite multiple demands made by Smith, Crystal has failed to cure its unlawful conduct, which is without any justification or excuse.

142. Smith has suffered and will continue to suffer substantial damages as the direct result of Crystal's ongoing failure to pay Smith's Severance Benefits to which he is entitled.

**WHEREFORE,** Smith respectfully requests that the Court enter judgment in his favor and against Crystal, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, consequential damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT IX

## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

## (IN THE ALTERNATIVE)

## (Christie v. TC)

143.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

144.    The allegations contained in this Count of the Complaint are pleaded as an alternative theory of recovery.

145.    At all relevant times hereto, TC was the sole shareholder of Crystal, controlled the manner in which Christie was compensated under the Christie Employment Agreement, and was involved in making decisions and corporate policies related to the payment of wages to employees, including Christie, making TC an "employer" under the PWPCL.

146.    At all times relevant hereto, Christie had a permanent residence and performed portions of his job duties for Crystal, and in turn, TC, from his home located within the Commonwealth of Pennsylvania, meaning Christie is an "employee" under the PWPCL.

147.    The Christie Employment Agreement is a legally binding contract.

148.    Pursuant to the Christie Employment Agreement, Christie is entitled to full and timely payment of Christie's Severance Benefits, that include guaranteed bonuses, which were directly tied to Christie's role as an employee and are considered a part of his compensation, and thus, constitute wages under the PWPCL.

149.    TC, as the employer, has refused to honor his obligations under the Christie Employment Agreement and has failed to pay Christie's Severance Benefits as he is contractually obligated to do.

150. Despite multiple demands made by Christie, TC has failed to cure its unlawful conduct, which is without any justification or excuse.

151. Christie has suffered and will continue to suffer substantial damages as the direct result of TC's ongoing failure to pay Christie's Severance Benefits to which he is entitled.

**WHEREFORE,** Christie respectfully requests that the Court enter judgment in his favor and against TC, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, consequential damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT X
## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### (IN THE ALTERNATIVE)
### (Smith v. TC)

152. The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

153. The allegations contained in this Count of the Complaint are pleaded as an alternative theory of recovery.

154. At all relevant times hereto, TC was the sole shareholder of Crystal, controlled the manner in which Smith was compensated under the Smith Employment Agreement, and was involved in making decisions and corporate policies related to the payment of wages to employees, including Smith, making TC an "employer" under the PWPCL.

155. At all times relevant hereto, Smith had a permanent residence and performed portions of his job duties for Crystal, and in turn, TC, from his home located within the Commonwealth of Pennsylvania, meaning Smith is an "employee" under the PWPCL.

156. The Smith Employment Agreement is a legally binding contract.

25

157.    Pursuant to the Smith Employment Agreement, Smith is entitled to full and timely payment of Smith's Severance Benefits, that include guaranteed bonuses, which were directly tied to Smith's role as an employee and are considered a part of his compensation, and thus, constitute wages under the PWPCL.

158.    TC, as the employer, has refused to honor his obligations under the Smith Employment Agreement and has failed to pay Smith's Severance Benefits as he is contractually obligated to do.

159.    Despite multiple demands made by Smith, TC has failed to cure its unlawful conduct, which is without any justification or excuse.

160.    Smith has suffered and will continue to suffer substantial damages as the direct result of TC's ongoing failure to pay Smith's Severance Benefits to which he is entitled.

**WHEREFORE,** Smith respectfully requests that the Court enter judgment in his favor and against TC, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, consequential damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT XI
## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### (IN THE ALTERNATIVE)
### (Christie v. Board Members)

161.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

162.    The allegations contained in this Count of the Complaint are pleaded as an alternative theory of recovery.

163. At all relevant times hereto, the Board Members had authority to, and did in fact, exercise operational control over Crystal, and had the power to hire, fire, and control the wages and working conditions of Christie.

164. At all times relevant hereto, Christie had a permanent residence and performed portions of his job duties for Crystal, and in turn, the Board Members, from his home located within the Commonwealth of Pennsylvania, meaning Christie is an "employee" under the PWPCL.

165. The Christie Employment Agreement is a legally binding contract.

166. Pursuant to the Christie Employment Agreement, Christie is entitled to full and timely payment of Christie's Severance Benefits, that include guaranteed bonuses, which were directly tied to Christie's role as an employee and are considered a part of his compensation, and thus, constitute wages under the PWPCL.

167. The Board Members, as the employer, have refused to honor their obligations under the Christie Employment Agreement and has failed to pay Christie's Severance Benefits as they are contractually obligated to do.

168. Despite multiple demands made by Christie, the Board Members have failed to cure its unlawful conduct, which is without any justification or excuse.

169. Christie has suffered and will continue to suffer substantial damages as the direct result of the Board Member's ongoing failure to pay Christie's Severance Benefits to which he is entitled.

**WHEREFORE,** Christie respectfully requests that the Court enter judgment in his favor and against the Board Members, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, consequential damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## COUNT XII

## VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

## (IN THE ALTERNATIVE)

## (Smith v. Board Members)

170.    The foregoing paragraphs are hereby incorporated by reference as if set forth herein in full.

171.    The allegations contained in this Count of the Complaint are pleaded as an alternative theory of recovery.

172.    At all relevant times hereto, the Board Members had authority to, and did in fact, exercise operational control over Crystal, and had the power to hire, fire, and control the wages and working conditions of Smith.

173.    At all times relevant hereto, Smith had a permanent residence and performed portions of his job duties for Crystal, and in turn, the Board Members, from his home located within the Commonwealth of Pennsylvania, meaning Smith is an "employee" under the PWPCL.

174.    The Smith Employment Agreement is a legally binding contract.

175.    Pursuant to the Smith Employment Agreement, Smith is entitled to full and timely payment of Smith's Severance Benefits, that include guaranteed bonuses, which were directly tied to Smith's role as an employee and are considered a part of his compensation, and thus, constitute wages under the PWPCL.

176.    The Board Members, as the employer, have refused to honor their obligations under the Smith Employment Agreement and has failed to pay Smith's Severance Benefits as they are contractually obligated to do.

177.    Despite multiple demands made by Smith, the Board Members have failed to cure their unlawful conduct, which is without any justification or excuse.

28

178.    Smith has suffered and will continue to suffer substantial damages as the direct result of the Board Member's ongoing failure to pay Smith's Severance Benefits to which he is entitled.

**WHEREFORE,** Smith respectfully requests that the Court enter judgment in his favor and against the Board Members, along with an award of monetary damages in an amount to be fully determined at trial, liquidated damages, consequential damages, attorneys' fees, pre- and post-judgement interest, and other relief as the Court may deem appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A.  Judgment in favor of Plaintiffs on all counts;

B.  An award of damages in an amount to be determined at trial, including Smith's Severance Benefits and Christie's Severance Benefits, interest, liquidated damages, consequential damages, attorneys' fees, and all other applicable relief under the New York Labor Law, or, alternatively, under the Pennsylvania Wage Payment and Collection Law; and

C.  Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury of all issues so triable.

## NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiffs intend to charge

29

and hold personally, jointly and severally liable, the ten (10) largest shareholders of Crystal for all debts, wages, and/or salaries due and owing to Plaintiffs referenced herein and Plaintiffs have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Respectfully submitted,

**ROYER COOPER COHEN BRAUNFELD LLC**

Dated: October 15, 2025

By: */s/ Barry L. Cohen*
Barry L. Cohen, Esquire
1120 Avenue of the Americas, 4th Floor
New York, NY 10036
212-389-5947 (phone)
484-362-2630 (fax)
bcohen@rccblaw.com

Alexander J. Nassar, Esquire*
101 West Elm Street, Suite 400
Conshohocken, PA 19428
267-546-0274 (phone)
484-362-2630 (fax)
anassar@rccblaw.com

Aislinn Sroczynski, Esquire*
Three Logan Square
1717 Arch Street, 47th Floor
Philadelphia, PA 19103
asroczynski@rccblaw.com
267-546-0704 (phone)
484-362-2630 (fax)

* *Pro Hac Vice* Applications forthcoming

*Attorneys for Plaintiffs, John Christie and Jeffrey Smith*

30